**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vivian Martinez,<br><br>    Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security,<br><br>    Defendant. | No. CV-10-00306-PHX-NVW<br><br>**ORDER** |

Vivian Martinez seeks review under 42 U.S.C. § 405(g) of the decision of the Commissioner of Social Security ("the Commissioner") denying disability benefits. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     Background**

    **A.     Procedural History**

Martinez is alleging disability since June 1, 2003. She was insured through June 30, 2005, and must establish disability on or before that date to be entitled to a period of disability and disability insurance benefits.

On November 19, 2003, Martinez protectively filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383c.  On September 14, 2004, Martinez reapplied for DIB and SSI, and those claims appear to have been consolidated with the 2003 claims.  On September 22, 2006, a hearing was held to determine whether Martinez was disabled within the meaning of the Social Security Act.  On November 21, 2006, the ALJ issued an unfavorable hearing decision.  On September 19, 2008, the Appeals Council vacated the November 21, 2006 hearing decision and remanded the case for further proceedings.

On February 25, 2009, the ALJ conducted a second hearing.  On August 5, 2009, the ALJ issued a second decision denying Martinez benefits.  On December 16, 2009, the Appeals Council denied Martinez's request for review, making the ALJ's second decision (the "Decision") the final decision of the Commissioner pursuant to 20 C.F.R. §§ 404.981, 416.1481 (2010).[1]  Martinez brought the current action for review of the Decision under 42 U.S.C. § 405(g).

**B.     Factual Background**

Martinez is a 38-year-old high school graduate who suffers from morbid obesity, residual effects of a ganglion cyst of the right wrist, low back pain, and situational depression.  She alleges that she became disabled on June 1, 2003, due to a back injury, pinched nerve of the left leg, pituitary tumor, and diabetes insipidus.[2]

In January 2001, Martinez was hit in the head, and a subsequent CT scan indicated that she had a pituitary tumor.  In February 2001, Martinez had surgery to remove the tumor, but it grew back over time.  In 2005, Martinez had a second surgery to remove the tumor again.  She does not presently need a third surgery.  She reports some memory loss and difficulty concentrating, but displays average intelligence and cognitive functioning.

---

[1] All references to the regulations refer to the 2010 edition.  Subsequent citations refer to part 404, which addresses Title II of the Act, and have parallel citations in part 416, which addresses Title XVI.

[2] Diabetes insipidus is a condition characterized by excessive thirst and urination without elevated blood glucose.

In 2001, Martinez also fell off of the stairs at her house and injured her back. She reports continued pain in her lower back and running down her left leg.

In 2003 and 2005, Martinez had surgery to remove a volar ganglion cyst in her right wrist. As a result, she has some continuing weakness in her right hand, but does not require any further surgery.

## II.     Standard of Review

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The district court may set aside the Social Securities Administration's disability determination only if the determination is unsupported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*

"The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.* at 954 (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. Analysis

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). In this case, the ALJ denied benefits under step three of the process, which required the ALJ to determine whether Martinez had an impairment that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926), and step five, which required the ALJ to assess Martinez's residual functional capacity, age, education, and work experience and to determine whether Martinez could make an adjustment to work other than her past relevant work.

### A. The ALJ Complied with the Appeals Council's Remand Order.

On remand, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). Martinez contends that the ALJ failed to comply with the Appeals Council's remand order in several respects. On September 19, 2008, the Appeals Council granted Martinez's request for review, vacated the ALJ's November 21, 2006 hearing decision, and remanded the case to the ALJ to:

- Obtain any additional medical evidence concerning the claimant's mental and physical impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913). . . .

- Further evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a.

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 96-8p).

- Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. . . .

1. **The ALJ Obtained "Any Additional Medical Evidence" Concerning the Martinez's Mental and Physical Evidence to Complete the Administrative Record.**

The Social Security claimant bears responsibility for furnishing medical and other evidence to prove disability. 20 C.F.R. § 404.1512. The Appeals Council did not shift this responsibility to the ALJ, but rather directed the ALJ to ensure that "any additional evidence" was considered by the ALJ and included in the administrative record. The ALJ considered not only the prior evidence, but also additional treatment records from Dr. Ring and Dr. Barranco and additional testimony from Plaintiff and a vocational expert. The additional evidence was included in the administrative record.

2. **The ALJ Further Evaluated Martinez's Mental Impairment and Provided Specific Findings and Appropriate Rationale for Each of the Functional Areas.**

The Appeals Council found that the medical evidence showed Martinez has a severe mental impairment, but the initial hearing decision did not contain an adequate evaluation of this impairment pursuant to 20 §§ C.F.R. 404.1520a and 416.920a. Under 20 C.F.R. §§ 404.1520a and 416.920a, the ALJ was required to rate the degree of Martinez's functional limitation in four broad functional areas: daily living activities; social functioning; concentration, persistence, or pace; and episodes of decompensation. The initial hearing decision states that because Martinez had no history of mental health treatment, the ALJ adopted the mental residual functional capacity suggested by the Disability Determination Service examiner. Based on a diagnosis of major depressive disorder, the examiner opined that Martinez had moderate mental limitations and retained the capacity to perform simple repetitive tasks. However, the initial hearing decision did not address mental impairment in its determination of the types of work Martinez is capable of performing.

In contrast, the Decision discussed Martinez's mental limitations and found Martinez has moderate restriction in activities of daily living; mild difficulties in social functioning; mild to moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation for an extended duration. The ALJ specifically found that

Martinez "can understand, remember and carry out simple and detailed job instructions; relate and interact with the public, supervisors and co-workers; maintain concentration and attention for simple repetitive work; and tolerate job-related stress."

### 3. The ALJ Gave Further Consideration to Martinez's Maximum Residual Functional Capacity and Provided Appropriate Rationale with Specific References to Evidence of Record in Support of the Assessed Limitations.

In the initial hearing decision, the ALJ found that Martinez "can perform sedentary work, or work involving lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently, standing/walking up to three or four hours per day, and sitting up to six hours per day." The ALJ also found "she must alternate between sitting and standing, can no more occasionally perform postural changes, and must avoid exposure to hazards." The initial hearing decision found "no evidence that [Martinez's] obesity requires any accommodation beyond the ability to alternate between sitting and standing, and limiting her overall standing time to no more than three or four hours per day." The Appeals Council noted that the initial hearing decision did not specify the sit/stand option in the function-by-function assessment of Martinez's ability to do work-related physical activities.

On remand, the ALJ found Martinez "has the residual functional capacity to perform the full range of sedentary work, or work which is generally performed while sitting, . . ., occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds," and "stand and walk at least 2 hours each in an 8-hour workday." The ALJ further found that Martinez "can occasionally climb, balance, stoop, kneel, crouch and crawl," but "should avoid working at unprotected heights and around hazardous machinery due to obesity."

The ALJ found that Martinez did not require a sit/stand option, "based on the lack of objective evidence to support severity of back pain," and therefore did not specify the sit/stand option in the function-by-function assessment of Martinez's ability to do work-related physical activities. The Decision implies that Martinez's obesity does not require

a sit/stand option, and substantial evidence in the record supports the ALJ's finding that a sit/stand option is not required, whether because of severe back pain or because of obesity. *See Orn*, 495 F.3d at 630 (ALJ's determination may not be set aside if it is supported by substantial evidence). Further, the ALJ provided specific references to record evidence in support of the assessed limitations.

On March 1, 2004, State agency physician Dr. J. Hayden considered Martinez capable of sedentary-level functioning due to her low back problems and obesity and did not find that Martinez must periodically alternate sitting and standing to relieve pain or discomfort. On May 27, 2004, State agency physician Dr. James Hopkins considered Martinez capable of sedentary-level functioning due to her back problems and did not find that Martinez must periodically alternate sitting and standing to relieve pain or discomfort.

On March 10, 2005, medical consultant Dr. Brent Layton examined Martinez and concluded she was capable of sedentary-level functioning, but needed to alternate standing and sitting due to low back problems and obesity. In dictation made on March 23, 2005, medical consultant Dr. Brent Layton opined that Martinez would have problems with standing and no problems with sitting, and did not mention any need to alternate sitting and standing. On August 30, 2005, Dr. O'Brien, a consultative examining physician, concluded Martinez needed to alternate between sitting and standing every quarter hour and the change needs to last for ten minutes, due to severe obesity and range of motion. On September 22, 2005, State agency physician Dr. Ernest Griffith considered Martinez capable of sitting (with normal breaks) about 6 hours in an 8-hour workday, standing and/or walking at least 2 hours in an 8-hour workday, and standing/walking 3 hours with a 2 to 4 minute break after 1 hour. Dr. Griffith also opined that Martinez must periodically alternate sitting and standing to relieve pain or discomfort.

In a written statement dated December 22, 2003, Martinez acknowledged she was able to bathe, groom, watch television, clean, sweep, mop, dust, vacuum, wash dishes, cook, wash clothes, and run errands. On May 14, 2004, Martinez wrote that on an

average day she cooks, cleans, washes clothes, showers, and runs errands. She said she was able to dust, sweep, mop, vacuum, wash clothes and dishes, and talk on the telephone. She also said she was able to shop for groceries and personal items for 45 minutes to an hour. On November 19, 2004, Martinez wrote that she cooked, cleaned the house, showered, did laundry, and shopping. She also stated she "swam 1 time this summer and only for 1 hr -vs- could normally handle 5 hrs."

During the first hearing in 2006, Martinez testified that she was 5'3" tall and weighed 320 pounds. She also testified that she could stand without sitting for fifteen minutes and sit without standing for fifteen minutes.

During the second hearing in 2009, Martinez testified that she weighed 308 pounds. When asked how long she can sit in a chair without discomfort, she testified that she has lower back discomfort all of the time, which she treats with the prescription medications tramadol and Vicodin. When asked whether the medications control her pain, Martinez testified that they do not completely take away the pain, but do help her sleep. When asked how long she can stand in one place without needing to sit down or lean against a table, she responded, "Not very long at all." The ALJ found Martinez's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms not credible to the extent they were inconsistent with the residual functional capacity assessment.

Thus, the ALJ plainly gave further consideration to Martinez's maximum residual functional capacity and provided appropriate rationale with specific references to evidence of record. Substantial evidence supports the ALJ's determination that Martinez does not require a sit/stand option, which made it unnecessary to specify the sit/stand option in the function-by-function assessment of Martinez's ability to do work-related physical activities. The ALJ's conclusions, however, rest on her assignment of weight to the medical evidence and her findings regarding Martinez's credibility. As discussed below, the ALJ did not err in assigning weight to the medical evidence or in finding portions of Martinez's testimony lacking credibility.

### 4. The ALJ Obtained Evidence from a Vocational Expert to Clarify the Effect of the Assessed Limitations on Martinez's Occupational Base.

During the second hearing, the ALJ obtained testimony from a vocational expert as directed by the Appeals Council. The remand order stated, "The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole." Martinez contends the ALJ erred in basing the Decision on a hypothetical question that did not match her residual functional capacity conclusion. As stated before, the ALJ's residual functional capacity conclusion was that Martinez can perform the full range of sedentary work, or work which is generally performed while sitting, occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, and stand and walk at least 2 hours each in an 8-hour workday, without alternating between sitting and standing.

The ALJ posed questions to the vocational expert regarding a hypothetical individual with the following characteristics: same age, education, and vocational background as Martinez; can lift and/or carry up to 20 pounds occasionally, 10 pounds frequently; stand and/or walk up to 3 or 4 hours per day; sit up to 6 hours per day; must alternate between sitting and standing; must limit postural changes, such as bending and stooping, to occasional; and must avoid exposure to hazards. The vocational expert opined that the hypothetical individual could perform receptionist and telephone solicitor/customer service jobs. In response to a subsequent question, the vocational expert explained that unskilled assembly type work would not permit a sit/stand option because that would decrease production. At that point, the ALJ asked how eliminating the sit/stand option would affect the analysis and asked several more questions. Thus, the ALJ solicited the vocational expert's opinion based on the residual functional capacity she would ultimately adopt and, in addition, the vocational expert's opinion based on a residual functional capacity further limited by a sit/stand option.

Moreover, the Decision identifies receptionist and telephone solicitor jobs as representative occupations that Martinez could perform, and both of those jobs were identified by the vocational expert as ones that could accommodate a sit/stand option

- 9 -

limitation. Not only did the ALJ not err in her questioning of the vocational expert, any such error would have been to Martinez's favor.

### B. The ALJ Did Not Err in Assigning Weight to Medical Opinions and Third Party Statements.

#### 1. Treating Physician Rodney S. Iancovici, M.D.

A treating source's opinion on the issue(s) of a claimant's impairment(s) will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

Dr. Iancovici was Martinez's primary care physician beginning July 26, 2005. On December 19, 2005, Dr. Iancovici completed a medical assessment of Martinez's ability to do work-related activities and opined that she could sit for one hour at a time, the total time she could sit during an eight-hour work day was one hour, and she could spend no time standing or walking. On September 12, 2006, Dr. Iancovici again completed a medical assessment of Martinez's ability to do work-related activities and opined again that she could sit for one hour at a time, the total time she could sit during an eight-hour work day was one hour, and she could spend no time standing or walking.

Martinez contends the ALJ erred in failing to provide Dr. Iancovici's opinion controlling weight or the deference it deserves. The Decision states:

> The undersigned has also considered Dr. Iancovici's opinion that the claimant cannot work (Exhibit 24F/20 and 25F) and gives it no controlling weight. The opinion is too restrictive based on objective evidence which does not support the existence of impairment so severe as to preclude all work activity. Moreover, the claimant visits Dr. Iancovici infrequently.
>
> . . . .

> In September 2006, Dr. Iancovici completed a medical assessment of [Martinez's] ability to do work related activities and opined that the claimant had a more restrictive RFC – less than sedentary-level functioning (Exhibit 25F/1-3). The undersigned has considered the opinion of Dr. Iancovici and gives it no controlling weight as it is without substantial support from the other evidence of record, specifically the normal radiological and objective findings in the case record. Moreover, the claimant visits the doctor infrequently.

(Tr. 34.)

The Commissioner concedes that the ALJ erred to the extent she discounted Dr. Iancovici's opinions because Martinez saw him infrequently. Such error is harmless and does not warrant reversal where, as here, the ALJ's remaining reasoning is adequately supported by substantial evidence in the record. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The ALJ expressly based her determination of weight assigned to Dr. Iancovici's opinion on the lack of record evidence supporting his opinion, "specifically the normal radiological and objective findings in the case record."

On January 8, 2004, treating neurologist Dr. F. David Barranco examined Martinez and an MRI scan obtained in May 2003. He found no clear evidence of lumbar radiculopathy despite L4 symptomatology. He concluded "that her MRI scan does not show any type of pathology on the left side that would account for any of the leg symptoms." Dr. Barranco asked Martinez to return to orthopedic specialist Dr. Jody Daggett to determine whether the pain source was her hip. On January 29, 2004, Dr. Daggett observed that Martinez did "not appear to have intrinsic hip pathology by history, physical examination or by radiographic studies." The January 29, 2004 X-ray showed no acute fracture or dislocation of the left hip, only early degenerative changes. Dr. Daggett noted that Martinez's response to epidural steroid injections was "profoundly positive though her relief was transient." Dr. Daggett recommended that Martinez be evaluated by a neurosurgeon for left lumbar radiculopathy. On June 8, 2004, Martinez had a lumbar spine MRI, which showed normal results except for a small right paracentral disk extrusion at L4-5, contained within the ventral epidural fat and which does not significantly distort the thecal sac or abut the adjacent nerve roots. On July 15, 2004,

after reviewing Martinez's new MRI scan, Dr. Barranco concluded Martinez had no structural abnormality that accounts for her back and left leg pain, but probably had "some kind of irritative radiculitis." On August 9, 2006, further radiographic studies found no abnormalities and no evidence of destructive changes.

Thus, the ALJ did not err by not giving Dr. Iancovici's opinion controlling weight because his opinion is inconsistent with other substantial evidence in the record and is not supported by relevant evidence.

### 2. Consultative Evaluating Physician Steven C. Hirdes, Ed.D., State Agency Reviewing Physician David Yandell, Ph.D., and the Vocational Expert

The Decision states:

> On August 10, 2005, medical consultant Steve C. Hirdes, Ed.D., opined that the claimant was restricted to simple repetitive tasks due to major depressive disorder with anxious and agitated features (Exhibit 14F). The undersigned has considered the opinion of Dr. Hirdes and gives it no controlling weight as the opinion appears to rely in part on an assessment of an impairment[] for which the claimant received no treatment from that doctor (20 CFR 404.1527(e) and 416.927 (e)) (Social Security Ruling 96-5p).

(Tr. 33-34.) Martinez misstates the Decision as giving Dr. Hirdes' opinion *no* weight when it actually gives his opinion no *controlling* weight. Dr. Hirdes' evaluation identifies a diagnosis of "major depressive disorder, single episode, moderate to severe with agitation and anxiety," but there is no evidence in the record that Martinez was ever treated for any mental health condition.

Dr. Hirdes evaluated Martinez on twenty mental abilities. He found no evidence of limitation or no evidence of significant limitation on seventeen of the twenty abilities. He found Martinez to be moderately limited, but not precluded, regarding (1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) the ability to work in coordination with or proximity to others without being distracted by them; and (3) the ability to accept instructions and respond appropriately to criticism from supervisors. Although the evaluation form asked for findings upon which he based his conclusions, Dr. Hirdes did not identify any. Dr.

Hirdes observed average intellectual functioning and mild concentration problems. The ALJ did not err by not giving Dr. Hirdes' opinion controlling weight when he did not identify findings upon which he based his conclusions.

Martinez also contends that the ALJ failed to acknowledge the vocational expert's testimony regarding the limitations identified by Dr. Yandell and erroneously concluded that the opinion supported a finding that the claimant can perform simple repetitive work. On August 25, 2005, based upon Dr. Hirdes' evaluation, state agency reviewing physician Dr. Yandell opined:

> While [Martinez] may have moderate difficulty performing activities within a schedule with regular attendance and punctuality, her previous work history demonstrates she has been capable of this on an ongoing basis. She may show some difficulty working with others without being distracted by them [] but has demonstrated an ability to function occupationally in such conditions. She may also have moderate difficulty accepting instructions and responding appropriately []. Overall, she receives good ratings and is capable of performing at least simple unskilled job skills on an ongoing basis.

(Tr. 494.) When the vocational expert was asked whether Martinez would be precluded from receptionist or telephone solicitor jobs by the three identified areas of moderate limitation, the vocational expert said she did not believe Martinez could do either of those jobs because they would involve dealing with the public and Martinez would have difficulty working with others without being distracted by them. The ALJ explained that she understood speaking to others on the telephone to be different from working in close proximity to others who may be distracting. Apparently not understanding the distinction between public contact and proximity, the vocational expert then opined that since Martinez has difficulty working with others without being distracted, she would not be able to do either job because they both involve dealing with the public. The ALJ did not err by disregarding this part of the vocational expert's testimony because the vocational expert was supposed to be opining based on limitations found by Dr.Yandell, and Dr. Yandell expressly found that, regardless of Martinez's moderate limitation in working with others, she had "demonstrated an ability to function occupationally in such conditions."

- 13 -

### 3. Consultative Evaluating Physician George M. O'Brien, D.O.

On August 30, 2005, Dr. O'Brien, a consultative examining physician, observed that Martinez was unable to fully extend her left knee and had a prominent limp. He noted that Martinez did not use a crutch, but she reported that she occasionally does. (*Id.*) He found Martinez "with considerable functional limitations primarily due to her morbid obesity and past injury of her left leg and knee" and that she "would have difficulty in holding employment." On the Medical Source Statement of Ability to Do Work-Related Activities (Physical), following the statement "If your patient suffers from severe fatigue and cannot complete an 8 hour day or 40 hour workweek, please comment on what findings you have based this conclusion," Dr. O'Brien wrote, "morbid obesity." Dr. O'Brien did not explain why he concluded Martinez would not be able to hold employment or complete an eight-hour workday or forty-hour workweek when he also opined that she could stand or walk at least two hours but less than six hours in an eight-hour day and sit five hours in an eight-hour day. Because Dr. O'Brien provided no basis for his conclusions, the ALJ did not err by finding that Dr. O'Brien's residual functional capacity assessment "too speculative [] as there is no reason why the claimant cannot hold an unskilled sedentary job."

### 4. Ms. Verdugo

In addition to evidence from acceptable medical sources identified in 20 C.F.R. § 404.1513(a), the ALJ was permitted to consider evidence from other sources, including medical sources not listed in § 404.1513(a), such as nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists. 20 C.F.R. § 404.1513(d)(1). Martinez contends the ALJ erred in giving Lisa Verdugo's medical source statement of ability to do work-related activities no controlling weight. Martinez has offered no evidence that Ms. Verdugo should be considered a medical source or that she has any medical training whatsoever, only that she works in Dr. Iancovici's office. Even with the increased involvement of nurse-practitioners, physicians' assistants, and

others in medical treatment and evaluation, merely being employed by a physician does not qualify an individual as a medical source under §§ 404.1513(a) or 404.1513(d)(1).

### 5. Ms. Martinson

Evidence from non-medical sources may be used to show the severity of a claimant's impairment and how it affects her ability to work. 20 C.F.R. § 404.1513(d)(4). Martinez contends the ALJ erroneously rejected the third-party statement of long-time friend Carrie Martinson based on misstatements of fact. However, the ALJ did not reject Ms. Martinson's statement and expressly relied on much of it. The Decision accurately states:

> In a third party questionnaire dated December 23, 2003, Carrie L. Martinson (claimant's friend) reported that the claimant performed a broad-range of daily activities including bathing, cooking, cleaning, cooking [sic.], doing laundry, vacuuming, washing dishes, driving a car, shopping, watching television, spending time with others, talking on the telephone, and using the computer.

(Tr. 38, 188-196.) The ALJ also accurately stated that Ms. Martinson reported that Martinez claimant performed a broad range of daily activities.

The ALJ did not mention that Ms. Martinson reported that Martinez cannot put her left shoe or sock on without assistance and cannot bend to shave her legs. Contrary to Ms. Martinson's statement (and Martinez's testimony), but without attributing it to Ms. Martinson, the ALJ concluded that Martinez "requires no assistance in dressing or in personal grooming." (Tr. 39.) It is not clear from the record whether the ALJ found a portion of Ms. Martinson's statement lacking credibility, merely overlooked this portion of Ms. Martinson's statement, or meant to say "little or no" instead of "no" assistance. Regardless, Martinez does not contend that this alleged oversight is reversible error. Substantial evidence in the record supports finding that Martinez is able to independently bathe, care for her hair, and dress, requiring only assistance with putting on her left sock and shoe and shaving her legs, and no evidence suggests that she is unable to work because she cannot put on her left sock and shoe or shave her legs independently.

1   Martinez also contends that the ALJ's conclusion that Martinez has normal daily
2   activities and interactions is a misstatement of fact and contrary to Ms. Martinson's
3   statement. In fact, the Decision draws an inference from both Martinez's testimony and
4   Ms. Martinson's statement:

> It thus can be inferred that the claimant has maintained a somewhat normal level of daily activity and interaction. It should be noted that the physical and mental requirements of these household tasks and social interactions are consistent with a significant degree of overall functioning.

(Tr. 39.) Ms. Martinson's statement that Martinez does household chores, cooks every day, goes outside two or three times weekly, is able to go out alone, drives a car, shops twice a month, and every day talks on the telephone and emails on a computer provides substantial evidence to support the ALJ's inference that Martinez "has maintained a somewhat normal level of activity and interaction."

### C. The ALJ Did Not Err in Comparing Medical Findings with Listed Impairment 1.04A.

At step three of the five-step sequential evaluation process, the ALJ considered the medical severity of Martinez's impairments. If the ALJ had found that Martinez has a medical impairment that meets or equals one of the Social Security listings in 20 C.F.R. §§ 404.1525, 404.1526, 416.925, or 416.926, the ALJ would have found Martinez disabled without need for further evaluation at steps four and five. However, the ALJ found that Martinez does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

Although Martinez's attorney had argued in her hearing brief that Martinez's impairments meet or equal in severity a listing, the brief did not identify which listing applied. When questioned by the ALJ, Martinez's attorney admitted there was no listing that Martinez "squarely meets." (Tr. 733.) Notwithstanding this clear waiver of any challenge to the ALJ's step three analysis, Martinez argued in her opening brief on appeal that the ALJ erred by making a summary conclusion without comparing the medical findings with the criteria from Listing 1.04A. Listing 1.04A describes disorders of the spine resulting in compromise of a nerve root or the spinal cord considered to be severe

1  enough to prevent an individual from doing any gainful activity. In her reply brief,
2  Martinez did not respond to the Commissioner's detailed comparison of the medical
3  evidence of record regarding Martinez's spine with Listing 1.04A, which demonstrates
4  that Martinez has not shown that her low back impairment met or equaled all the criteria
5  of Listing 1.04A for any twelve-month period.
6       Therefore, the ALJ did not err in her step three analysis regarding whether
7  Martinez has a medical impairment that meets or equals a Social Security listing.

**D.  The ALJ Did Not Err in Evaluating Martinez's Credibility.**

In evaluating the credibility of Martinez's testimony regarding subjective pain or other symptoms, the ALJ was required to engage in a two-step analysis: (1) determine whether Martinez had presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject Martinez's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Martinez's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The ALJ did not make a finding of malingering. Second, the ALJ found Martinez's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. In other words, the ALJ found Martinez's statements not credible to the extent she claims she is unable to perform sedentary work. As shown below, the ALJ provided specific, clear, and convincing reasons for rejecting those statements.

**1.  Martinez's Testimony Regarding the Limiting Effects of the Symptoms of Her Impairments**

When her attorney asked Martinez why she cannot work, Martinez responded that she has memory loss and she is unable to pick up anything or lift anything. In response to questioning by the ALJ, Martinez testified she has lower back discomfort all of the time

for which she takes the prescription medications tramadol and Vicodin. She testified that the medications do not take the pain completely away, but they do help her sleep.

Martinez also testified that she has headaches four or five times a week, and each headache usually lasts two to three hours, but may last all day. To treat the headaches, Martinez takes only over-the-counter aspirin. She testified that she also has problems with her right hand, including numbness and weakness. She testified that she also has severe nonstop pain in her legs, mainly in her left inner thigh.

Martinez further testified that she feels she has a depressive disorder, but has not been seen by a mental health professional. She said that her doctor does not think she needs mental health care even though she suffers from depression all the time.

### 2. The ALJ's Reasons for Rejecting Some of Martinez's Testimony Regarding the Limiting Effects of the Symptoms of Her Impairments

The ALJ found that Martinez had been capable of the exertional requirements of sedentary work since her alleged onset date, June 1, 2003, through the date last insured, June 30, 2005, and Martinez's alleged symptoms and limitations are not corroborated by the objective medical evidence. The Decision provides numerous specific, clear, and convincing reasons for rejecting portions of Martinez's testimony regarding the limiting effects of the symptoms of her impairments.

The ALJ noted that treating neurologist Dr. F. David Barranco's notes state that Martinez reported that she was "feeling fine" and not having headaches. The ALJ further noted that Martinez takes no medication for headaches and had seen Dr. Barranco only twice in 2007 and not since. The ALJ also identified Martinez's self-described daily activities that indicate Martinez is able to perform at least sedentary work:

> She acknowledges, in her written statements and oral testimony, that she is able to bathe and groom, drive during the day, watch television, clean, sweep, mop, dust vacuum, wash dishes, cook, listen to music, do laundry, shop, spend time with others, and manage her financial matters (see Exhibits 4E, 8E, 9E, and testimony.

(Tr. 39.) This evidence contradicts Martinez's allegation that she cannot perform sedentary work and her testimony that she has headaches all of the time. Moreover,

Martinez's testimony that she has chronic lower back and left leg discomfort and numbness in her right hand is not inconsistent with finding that she is capable of performing sedentary work. Her ability to perform sedentary work is further supported by Ms. Martinson's statement that Martinez communicates with her daily by telephone and computer e-mail.

To the extent the ALJ improperly relied on Martinez's failure to lose weight and misstated that Martinez had not seen specialists, the Commissioner concedes those errors. Such errors are harmless, however, because the ALJ provided other valid reasons for rejecting portions of Martinez's testimony and the ALJ's remaining reasoning is adequately supported by substantial evidence in the record. *See Carmickle*, 533 F.3d at 1162.

Therefore, the ALJ did not err in rejecting as not credible portions of Martinez's testimony to the extent she claims the limiting effects of the symptoms of her impairments prevent her from performing sedentary work.

IT IS THEREFORE ORDERED affirming the final decision of the Commissioner of Social Security denying Vivian Martinez disability benefits.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendants against Plaintiff and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 1st day of September, 2010.

_____
Neil V. Wake
United States District Judge